# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3365

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

STANLEY GILBERT,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 02 CR 178—**Sarah Evans Barker**, *Judge.*

_____

ARGUED JUNE 10, 2004—DECIDED DECEMBER 9, 2004

_____

Before CUDAHY, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In May, 2003, a jury convicted
Stanley Gilbert of being a felon in possession of a firearm
and a felon in possession of ammunition in violation of 18
U.S.C. § 922(g)(1). That criminal statute is violated if the
government demonstrates that: (1) the defendant has a
prior felony conviction; (2) the defendant possessed a fire-
arm or ammunition; and (3) the firearm or ammunition had
traveled in or affected interstate commerce. 18 U.S.C.
§ 922(g)(1); *United States v. Allen*, 383 F.3d 644, 647 (7th
Cir. 2004); *United States v. Morris*, 349 F.3d 1009, 1013
(7th Cir. 2003). Only the possession provision was at issue

in the trial. Because he had three previous convictions for violent felonies, the district court sentenced him under 18 U.S.C. § 924(e)(1) to 188 months on each count, to be served concurrently.

Gilbert raises a number of challenges on appeal, but the dispositive one concerns the admission at trial of pre-trial statements made to police officers by Gilbert's wife, Sherese Gilbert (hereinafter referred to as "Sherese" so as to distinguish her from the defendant Gilbert). Sherese invoked her marital testimonial privilege and refused to testify at trial. The court, however, admitted the taped conversation with the officers as well as its transcript into evidence. In admitting the conversation into evidence, the court held that it bore sufficient circumstantial guarantees of reliability. The court relied for its ruling on prior caselaw that held such statements were admissible under the residual exception to the hearsay rule in Federal Rule of Evidence 807 (formerly Fed. R. Evid. 804(b)(5)) if the declarant were unavailable as a witness and there were sufficient circumstantial guarantees of trustworthiness. In applying that rule, courts have required that circumstantial guarantees of trustworthiness must be present and that the declaration "must be 'offered as evidence of a material fact,' be more probative of that point than any other evidence the proponent can procure through reasonable efforts, and serve both 'the general purposes' of the Rules of Evidence and 'the interests of justice.'" *United States v. Bradley*, 145 F.3d 889, 894 (7th Cir. 1998), *citing* Fed. R. Evid. 804(b)(5)(A)-(C); Fed. R. Evid. 102; *United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996); *United States v. Dent*, 984 F.2d 1453, 1462 (7th Cir. 1993); *see also Ohio v. Roberts*, 448 U.S. 56 (1980), *abrogated by Crawford v. Washington*, 124 S. Ct. 1354 (2004).

Since Gilbert's trial, however, the Supreme Court issued *Crawford v. Washington*, 124 S. Ct. 1354 (2004). Addressing a similar situation in which a wife's out-of-court statements

to a police officer were admitted at trial, the *Crawford* Court held that the admission of testimonial hearsay evidence in a criminal trial where the defendant has no opportunity to cross-examine the witness violates the Confrontation Clause of the Sixth Amendment. *Id.* at 1374. In light of that Supreme Court decision, the government acknowledges on appeal that the taped conversation was not properly admissible, and that its admission at trial violated Gilbert's constitutional rights under the Confrontation Clause. The government argues, however, that its admission was harmless. Therefore, the issue before us is whether it is clear beyond a reasonable doubt that a rational jury would have found Gilbert guilty even absent the admission of Sherese's statement. *Neder v. United States*, 527 U.S. 1, 18 (1999); *United States v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000). We therefore must consider the improperly admitted evidence in the context of the trial as a whole.

The firearm and ammunition that formed the basis for the felon in possession charge were discovered at Sherese's residence pursuant to a search warrant on November 26, 2002. According to testimony by Gilbert, he and Sherese separated in August, 2002. She later moved to the house at 615 N. Gray Street which she rented. Special Agent Susan Roehrig testified that the utilities and the phone at the new address were only in Sherese's name. The couple also shared some vehicles, including a blue Cadillac, which were registered at the old address. Gilbert visited Sherese at the Gray Street residence in order to see his five stepchildren.

The search warrant was issued as a result of an investigation of a prior incident that took place on November 20, 2002. On that date, Indianapolis police officers responded to a report of shots fired at 1015 N. Gale Street. At the scene, Rodney Myles spoke with the officers as an eyewitness. He testified at trial as to the events that night. Myles testified that he was the brother of Jesse Isaac, who was the ex-

boyfriend of Gilbert's daughter.[1] He stated that there was a dispute between Jesse and Gilbert relating to Jesse's relationship with Gilbert's daughter.[2] Gilbert came to the Isaac house during the day of November 20, and spoke with Myles at that time. That was the first time Myles had met him. Myles described him at that time as "a pretty cool guy." Myles testified that he saw Gilbert again around 1:00 or 2:00 in the morning, in a blue Cadillac driving through the alleyway. Myles approached the car, and Gilbert asked for Jesse, but Myles informed him that Jesse was sleeping and that he should come back another time. Myles then saw Gilbert reach for a gun, and he stepped back. Gilbert drove off and fired into the air four times. Myles then contacted the police and officers were sent to the residence. After speaking with Myles, those officers recovered four shell casings from the area indicated by Myles. Although Myles did not know Gilbert's name at that time, his brother Jesse apparently identified him to the police based on Myles' description. Someone at the house—the testimony diverges on this—then led the police to the Gray Street address. The officers spoke with Sherese at that time, but neither Gilbert nor the blue Cadillac were at that residence.

On November 26, the police returned to Sherese's residence with a search warrant. Officers present for that

---

[1] There was some testimony that Myles gave his name to the officers as Rodney Isaac, but he testified at trial that his name was Myles and therefore we will refer to him as Myles.

[2] The details of that dispute were developed to some extent in pre-trial submissions and other statements, including evidence that Gilbert suspected Jesse Isaac of burglarizing Sherese's residence, that an order of protection existed against Jesse Isaac, and that Jesse Isaac had come to Sherese's residence with a gun. The jury heard only that a dispute existed related to their relationship, and therefore that is all we will consider in addressing this issue.

search testified as to what transpired. In the course of that search, they found Gilbert in the doorway of the master bedroom unclothed. They located a firearm and ammunition in the house. The firearm, a .45-caliber Hi-Point pistol containing five rounds, was located in the master bedroom in a pouch on the floor between a dresser and a wall. The firearm could not be seen from the location where Gilbert was found, because the open door to the bedroom blocked the view of that area of the dresser, and because it was secreted between the dresser and the wall. The firearm was lawfully registered to Sherese. In a locked closet in another bedroom, they found the gun box for the Hi-Point, which contained instructions for the gun and a box of Fiocchi .45- caliber ammunition. That closet also contained female clothing. The key to that closet was located in Sherese's bedroom, the master bedroom in which the firearm was found, on her dresser in a pink and white box containing hair clips. In addition, four rounds of .32 Smith & Wesson RP ammunition were found on a dresser in the master bedroom.

At the time of that search, Sherese spoke with an officer, and a portion of that conversation was tape-recorded. The government sought admission of part of that tape and transcript at trial, which was granted by the district court. In those excerpts, Sherese stated that only two persons had access to the firearm, she and Gilbert. She further declared that Gilbert knew where the key to the closet was kept, and that on a number of occasions he had taken the gun out of the closet and removed the trigger lock. After the officers questioned her on November 20, she looked for the gun and it was not in the pouch in her room. She informed them that Gilbert had been at the house earlier that evening, and that the gun reappeared the next day after he had returned to the residence. Because Sherese invoked her marital testimonial privilege and refused to testify, Gilbert was unable to conduct any cross-examination regarding that testimony. Sherese attempted to recant the statements to the officers

a few days after the search, contending that the officers had threatened her and that she feared she would lose her five children. The court determined that the statements were reliable and admitted them, and the jury did not hear the recantation. As mentioned earlier, the government concedes that in light of *Crawford*, the admission of those statements by Sherese violated Gilbert's constitutional rights under the Confrontation Clause.

In analyzing whether that error was harmless, it is important to note that the indictment charged possession of the firearm and ammunition on or about November 26, the date of the search when Gilbert was found at Sherese's residence. The indictment did not allege possession on or about November 20, the date that Gilbert allegedly fired shots outside the Isaac residence. Accordingly, we must analyze the error in light of its impact on that possession charge.

Possession for purposes of the felon-in-possession prohibition

> 'may be either actual or constructive and it need not be exclusive but may be joint . . . . Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object.' *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). Actual and constructive possession may be proved by either direct or circumstantial evidence. *See id.*

*United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003). Here, the government argues that Gilbert had constructive possession of the gun in that he knowingly had the power and intention to exercise dominion and control over the firearm and ammunition in the residence on the day of the search. Sherese's statements to the officers, however, pro-

vided the most damaging evidence against Gilbert on that charge. Her statement attributed to Gilbert knowledge of the location of the firearm and the ammunition, as well as knowledge as to the location of the key to the locked closet. In addition, she testified as to Gilbert's actions in exercising control over the firearm in the past, thus furthering the government's case. Absent her statement, the only evidence that he possessed the firearm and ammunition on November 26 is his presence in the house in the doorway to the master bedroom, and the testimony of Myles regarding the encounter during the prior week. Gilbert's mere presence in the room, however, without more, would not be enough to establish constructive possession. *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003). The government does not argue that Gilbert resided in the house, nor that his possessions in the room were so numerous as to evidence control over the room and its contents. *Compare id.* and cases cited therein. The bulk of the ammunition was located in a closet containing female clothing, and the key was in a pink and white box containing hair clips. Nothing tied Gilbert to those locations. Moreover, the firearm was hidden in a pouch between a dresser and a wall, and it was only Sherese's testimony that established Gilbert's knowledge of that location.

A jury could credit the testimony by Myles, which would help establish possession. The shell casings at the Isaac house matched the firearm found in Sherese's house, and therefore if the jury credited Myles' identification of Gilbert, then that would indicate that Gilbert at least in the recent past had been in possession of the firearm and ammunition found in the residence. Gilbert testified as well, however, and denied being at the Isaac house that night and discharging a firearm. The forensic experts found no fingerprints or palm prints of Gilbert on the firearm, the ammunition, the gun pouch, or the gun box. Numerous fingerprints of Sherese were found on the gun box in the closet, which

contained the instructions and the box of ammunition for the Hi-Point firearm. Moreover, Myles' family had a dispute with Gilbert and therefore potentially had a reason to fabricate that identification. Furthermore, by his own testimony, Myles had only seen Gilbert once before, and the incident occurred at night while Gilbert was in a car. Finally, given Jesse Isaac's relationship with Gilbert's daughter, there was potential for others to have access to the firearm at that house.

That does not mean that the government must rule out all other possibilities in order to satisfy harmless error analysis. The standard is whether we can tell beyond a reasonable doubt that the erroneous admission did not impact the verdict. Here, the most probative evidence as to Gilbert's knowledge of the gun and intention to exercise dominion over it was presented by Sherese, and that is precisely the evidence that was wrongly admitted. The testimony by Myles relates to Gilbert's possession on a different date, and was bolstered at trial by Sherese's statement that the gun was missing on that date and that only Gilbert had access to it. Absent that corroboration, we cannot determine beyond a reasonable doubt whether the jury would credit Myles' testimony, nor whether a jury crediting that testimony would find it sufficient to convince the jury beyond a reasonable doubt that he possessed the firearm and ammunition on the later date alleged in the indictment. In fact, the government, in seeking the admission of the evidence under the residual exception to the hearsay rule, acknowledged the importance of her statement to the case in the following exchange with the court:

> THE COURT: And I hear in your representation to me just now that because it's the only evidence with respect to possession by Mr. Gilbert, at the residence at least, that it is the most and perhaps the only probative evidence on that point for which it's being offered; is that right?

MR. MORRISON: I think that's correct, Judge. . . . .

**Tr. 1 at 8. In light of the evidence as a whole at trial, we cannot determine beyond a reasonable doubt that a jury would have returned a guilty verdict absent the statements by Sherese. Accordingly, Gilbert is entitled to a new trial free from that error.**

Because we are reversing the conviction on that ground, we need not decide the challenge raised by Gilbert to his sentence. In addition, we leave for the district court on remand Gilbert's challenges relating to the motion to suppress. Only some of those challenges were raised in the district court, but the parties dispute whether that resulted from waiver or from the government's delay in providing the documents upon which the challenges are based. Although the additional allegations do not appear to be particularly promising for Gilbert, given the remand for a new trial, it makes more sense for the district court to have the full opportunity to consider the issue.

In conclusion, although the district court properly followed our precedent in admitting Sherese's statements, *Crawford* has since made it clear that the admission of her statements is unconstitutional. Accordingly, the decision of the district court is REVERSED and the case REMANDED for a new trial.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*