THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Randall Scott Tyler,       
Appellant.
 
 
 

Appeal From Lexington County
Marc H. Westbrook, Circuit Court Judge

Unpublished Opinion No. 2005-UP-274
Submitted April 1, 2005  Filed April 19, 2005

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Jeffrey A. Jacobs, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.
 
 
 

PER CURIAM: Randall Scott Tyler appeals his convictions for murder, first-degree burglary, and criminal conspiracy.  Tyler contends the trial court violated his constitutional right to confront an adverse witness by admitting testimonial hearsay statements made by his non-testifying           co-defendant, Travis Harsey.  We affirm. 
FACTS
In July of 2002, Tyler asked his wifes uncle, Jimmy Williams, to give him a ride to Harseys home.  Williams obliged, and in the car on the way to Harseys home, Tyler told Williams that he was mad at Robert Corky Lewis over a dispute involving money.  Tyler and Lewis were both drug dealers.  Tyler bought drugs from Lewis, and Harsey bought drugs from Tyler.  Tyler testified that he needed a ride to Harseys so Harsey and he could go to Lewiss home to buy crystal meth from him.
When they arrived at Harseys home, Harsey was there along with his girlfriend and some children.  Tyler and Harsey went into a separate room and talked for about ten or fifteen minutes.  Williams entered the room to tell them he was ready to leave.  When he did so, he saw a magazine for a semiautomatic pistol containing what appeared to be at least one bullet lying on the bed.  Tyler and Harsey told Williams they were going to Lewiss home.  One of the children in the home observed that Harsey had a gun.  Everyone in the house knew about the gun before Tyler and Harsey left.  At that time, Tyler and Harsey were dressed in jeans or baggy pants and t-shirts.  
Later that night, Donna Hutto, Lewiss girlfriend, was awakened by the sound of arguing outside her home.  She recognized the voices of Tyler and Lewis.  Hutto had known Tyler for two or three years, and had seen him approximately ten to twenty times prior to the date of the incident.  Hutto heard Lewis identify the other speaker as Randy, and noticed that Lewis sounded scared.
Hutto looked out the front window to see if Tylers car was parked outside, but saw no cars other than those belonging to Lewis and her.[1]  Hutto then looked into the backyard and saw Tyler walking into the garage.  He was wearing a baseball cap, a baseball jacket, jeans, and a partial mask.  Hutto recognized Tyler even though most of his face was covered.  She heard Tyler order Lewis to go into the house.  She could tell something was wrong because of the fear in Lewiss voice.  Hutto did not see or hear anyone else other than Lewis and Tyler. 
Concerned, Hutto left and drove to her brothers home to call the police.  As she pulled out of the narrow driveway, she did not see any other vehicles.  When Hutto and her brother returned, Lewis was dead.
Police arrived soon afterward and found Lewis had six gunshot wounds and three blunt trauma injuries to the top of his head.  They found signs a struggle had occurred and that an intruder had searched the building.  For example, a dresser drawer in the main bedroom had been taken out and appeared to have been rummaged through.  Additionally, an overturned bar stool appeared to have been shoved up into the ceiling tiles in order to access an area above the ceiling where Lewis kept money.  Also, police found several sets of knuckle marks with traces of blood in the ceiling tiles.  
Hutto specifically identified Tyler as having been at her home and involved in an altercation with Lewis on the night of Lewiss murder.  She identified Tyler in a photo lineup without hesitation.
The next morning, Tyler told Williams that Lewis and he had argued.  Tyler also told Williams he had seen Harsey shoot Lewis, and he believed Lewis was dead.  Tyler asked Williams to fabricate an alibi that they were fishing on the date of the murder.  Williams initially obliged, but when pressed by police he admitted taking Tyler to Harseys home on the day of the murder.  Tylers family also told police Tyler and Williams were fishing that night.
DNA testing confirmed that the blood from the knuckle marks on the ceiling in Lewiss house was Tylers.  Also, after Tyler was arrested, officers noticed healing injuries on Tylers knuckles.
During a police interview, Harsey said that he had parked his car back up towards the road hidden from [Lewiss] home.  Williamss testimony led to Harseys arrest and the underlying charges. 
Tyler and Harsey were tried separately.  At trial, Tyler testified Harsey and he were engaged in a routine drug transaction with Lewis when Harsey unexpectedly pulled a gun and attempted to rob Lewis.  Tyler testified he immediately ran out of the house and got into Harseys car as Harsey was leaving.  Over Tylers objections, the court admitted Harseys hearsay statement to police that he parked his car so that it was hidden from [Lewiss] home when they visited Lewis on the night of his murder.  The jury convicted Tyler of all charges and sentenced him to life in prison.  This appeal follows.
STANDARD OF REVIEW
In criminal cases, the appellate court sits to review errors of law only.  State v. Wilson, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001).  We are bound by the trial courts factual findings unless they are clearly erroneous.  Id. at 6, 545 S.E.2d at 829.  Concerning the admission of evidence, the trial courts determination will be sustained absent error and resulting prejudice.  State v. Brown, 333 S.C. 185, 189, 508 S.E.2d 38, 40 (Ct. App. 2001).
DISCUSSION
The only issue on appeal is whether the trial court erred in admitting Harseys hearsay statement about where he parked the car.  Tyler maintains admission of the statement violated his right of confrontation because Harsey was tried separately and thus could not be cross-examined at trial.  Although we agree that the statement should not have been admitted, we find the error harmless. 
Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Rule 801(c), SCRE.  Harseys out-of-court custodial statement was admitted at trial as a statement against interest under the hearsay exception of Rule 804(b)(3), SCRE.  Tyler does not dispute this ruling.  Instead, Tyler argues that the statement was testimonial in nature and thus violated his constitutional right of confrontation. 
The Sixth Amendment to the United States Constitution provides, in relevant part, that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.  This provisionthe Confrontation Clause has been incorporated through the Fourteenth Amendment and applied to both federal and state prosecutions.  Pointer v. Texas, 380 U.S. 400, 406 (1965).  The Confrontation Clause ensures the right of an accused to cross-examine witnesses against him in court.  Additionally, it defines the scope of the admissibility of out-of-court statements.  Ohio v. Roberts, 448 U.S. 56, 65 (1980), overruled in part by Crawford v. Washington, 541 U.S. 36 (2004).  
In Crawford, the United States Supreme Court held that the Confrontation Clause bars use of out-of-court statements that are testimonial in nature, unless the declarant was unavailable to testify at trial and the defendant had a prior opportunity to cross-examine that witness.  Crawford 541 U.S. at 53-54.  The Crawford court expressly declined to formulate a comprehensive definition of testimonial, but noted that ex parte testimony at a preliminary hearing and statements taken by police during interrogations must be considered testimonial under any standard.  Id. at 51-52.  
Because Harsey made the statement during a custodial interview with police, the statement is testimonial under Crawford.  See United States v. Jones, 393 F.3d 107, 110 (2nd Cir. 2004) (noting interrogations by law enforcement officers fall squarely within the testimonial class).  Therefore, the admission of the statement was erroneous.  The State concedes this issue in its brief, as it only argues that admission of the evidence was harmless error. 
It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review . . . and Crawford does not suggest otherwise.  United States v. McClain, 377 F.3d 219, 222 (2nd Cir. 2004).  Crawford violations do not mandate a new trial where the government can show beyond a reasonable doubt the error did not contribute to the verdict obtained.  Id.  To determine whether a Crawford violation is harmless error, a court must find it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty even absent the inadmissible evidence.  United States v. Gilbert, 391 F.3d 882, 884 (7th Cir. 2004).  
South Carolina law is in accord[e]rror is harmless when it could not reasonably have affected the result of the trial.  State v. Pagan, 357 S.C. 132, 144, 591 S.E.2d 646, 653 (Ct. App. 2004).  Whether an error is harmless depends on the circumstances of the particular case.  Id. at 144, 591 S.E.2d at 652. Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result.  State v. Adams, 354 S.C. 361, 380-81, 580 S.E.2d 785, 795 (Ct. App. 2003).  Insubstantial errors not affecting the result are harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.  Id.  The admission of improper evidence is harmless where the evidence is merely cumulative to other evidence.  Pagan, 357 S.C. at 145, 591 S.E.2d at 653.
Here, we find the admission of Harseys statement, although erroneous, was harmless beyond a reasonable doubt.  Absent the improper hearsay, we find overwhelming evidence of Tylers guilt as to all three charges: (1) criminal conspiracy, (2) murder, and (3) first degree burglary.  
Conspiracy is defined as the combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means.  S.C. Code Ann. § 16-17-410 (2004).  The gist of the offense of conspiracy is the agreement or combination.  State v. Gunn, 313 S.C. 124, 133, 437 S.E.2d 75, 80 (1993).  Under South Carolina law, no overt act in furtherance of the conspiracy is requiredthe crime is the agreement itself.  State v. Buckmon, 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001).  To establish the existence of a conspiracy, neither proof of an express agreement nor direct evidence are essential.  Id.  However,  the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties.  Id.  The State must show a shared, single criminal objective to act together for their shared mutual benefit.  Gunn, 313 S.C. at 134, 437 S.E.2d at 80. 
Tyler admitted Harsey and he went to Lewiss home to buy illegal drugs.  Additionally, circumstantial evidence suggests Tyler and Harsey were plotting to harm Lewis.  For example, Tyler told Williams in the car that he was mad at Lewis over a dispute involving money.  While at Harseys house, Williams found the two alone in a room in which a magazine containing at least one bullet was visible.  One of the children in the house also saw the gun, and soon everyone in the house knew about it.  When Tyler and Harsey arrived at Lewiss house, Hutto noticed Tyler had changed clothes and was wearing a jacket, hat, and mask although it was mid-July.  Finally, evidence of Tylers blood on the ceiling tiles suggests that Tyler did not run off immediately, as he claimed, but carried out a preconceived plan to rob Lewis.  
Thus, we find Tylers guilt was conclusively proven even without the erroneously admitted evidence that Tyler and Harsey had hidden Harseys car while at the murder scene.  We find admission of the statement was harmless as to the criminal conspiracy charge.  
We likewise find an abundance of evidence to support Tylers burglary conviction.  To prove burglary in the first degree, the State must show that the defendant entered a dwelling without consent with the intent to commit a crime therein, and one of several aggravating circumstances were present.  S.C. Code Ann. § 16-11-311 (Supp. 2004).  The aggravating circumstances alleged in the indictment are established: 

(A) . . . 
 
(1)     when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime:
 
(a)     is armed with a deadly weapon or explosive; or
(b)     causes physical injury to a person who is not a participant in the crime; or
. . .
 
(2)     the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
(3)     the entering or remaining occurs in the nighttime.
 

Id.  No break-in is required; it is sufficient that the entry be without consent.  State v. Kornahrens, 290 S.C. 281, 288 n.4, 350 S.E.2d 180, 185 n.4 (1986).
Hutto testified she saw and heard Tyler order Lewis into the house.  She noticed that Lewis appeared fearful.  Tyler does not assert that he had consent, or that the structure was not a dwelling.  The same evidence tending to show the existence of a conspiracy also tends to establish intent to commit a crime therein.  Tyler or Harsey had a gun, and Tyler donned a mask and heavy clothing to disguise his features.  In addition, police found the drawer had been rifled through and the ceiling damaged, and Tylers blood was on the ceiling.  
Moreover, all of the aggravating factors included in the indictment are present. Either Tyler or Harsey was armed with a deadly weapon, and they inflicted physical injury toand in fact killedLewis, who was not a party to the crime.  Tyler also had two prior convictions for breaking and entering with intent to steal in Michigan.  Finally, the intrusion occurred after dark, sometime after 10:30 p.m.  Thus, we find the elements of first-degree burglary are established without the improperly admitted evidence.
Finally, we find sufficient evidence to support Tylers murder conviction.  Although the evidence does not clearly indicate who fired the fatal shot, the evidence nevertheless sustains Tylers conviction.  Under the Pinkerton doctrine, each conspirator is liable for all acts committed in furtherance of the conspiracy regardless of which conspirator actually committed the act.  Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); State v. Steadman, 257 S.C. 528, 543, 186 S.E.2d 712, 717 (1972); see also 16 Am. Jur. 2d Conspiracy § 19 (2004).  Such liability is limited to acts within the scope of the conspiracy and acts reasonably foreseeably stemming from the conspiracy.  Pinkerton, 328 U.S. at 647-48.  Because evidence compellingly indicates Tyler and Harsey conspired to harm Lewis, Tyler is liable for Lewiss murder if it was committed in furtherance of the conspiracy or if it was a reasonably foreseeable result.  We find such evidence exists beyond a reasonable doubt.
Evidence that Tyler told Williams he was mad at Lewis and that Tyler and Harsey conversed in low tones in the back room with a gun point to the presence of malice.  The evidence further establishes that a physical confrontation with Lewis was within the scope of the conspiracy.  Moreover, evidence that Tyler wore a mask and ordered Lewis into the house, and that Tylers blood was found on the ceiling tiles tends to show motive and a preconceived plan.  
Any prejudicial effect arising from the Confrontation Clause violation was minimal because Tylers repeated attempts to mislead the police evidenced guilt and undermined his credibility.  Tyler admitted that he told Williams to lie to police and to tell them they were fishing.  Tylers family gave police the same alibi.  Tyler also told police to look for his brother instead, when in fact Tylers brother was in Michigan on the date the incident occurred.  
Finally, other evidence permitted an inference that the car had been hidden.  Hutto testified she looked out the front window and did not see a car.  She saw no other vehicles when she drove away.  An aerial photograph showed that there was no other place near the house to park.  We find Harseys statement was cumulative to this evidence. 
Because we find all of Tylers convictions are supported beyond reasonable doubt by other evidence, we find no prejudice resulted from the erroneously admitted evidence.  Accordingly, the Crawford violation here was harmless. 
 AFFIRMED.
HEARN, C.J., KITTREDGE and WILLIAMS, JJ., concur.

[1]        Lewis and Hutto lived in a house set back from the road and almost completely surrounded by woods.  Other than the driveway and carport, the only other ordinary place to park a car was in front of the house.