NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted May 23, 2007
Decided May 23, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3689

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>CLIFFORD R. MAXWELL,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Western Division<br><br>No. 05 CR 50069-2<br><br>Philip G. Reinhard,<br>*Judge.* |

**O R D E R**

Clifford Maxwell was convicted after a jury trial of possessing a firearm as a felon and possessing an unregistered firearm.  *See* 18 U.S.C. § 922(g)(1); 26 U.S.C. § 5861.  Maxwell appeals, but his appointed attorney moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he cannot discern any nonfrivolous grounds for appeal.  We invited Maxwell to respond to counsel's motion, *see* Cir. R. 51(b), but he has not done so.  Our review is limited to the points discussed in counsel's facially adequate brief.  *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

In June 2005 Maxwell was driving a car that a deputy sheriff stopped shortly after midnight in Winnebago County, Illinois, because the passenger, William Gary, was not wearing a seat belt. As the car came to a stop, the deputy saw Gary lean over and reach below his seat as if to conceal something. When the deputy asked for identification, Maxwell complied, but Gary claimed that he had no identification and instead provided his brother's name and his own date of birth. After running a computer check, the deputy discovered Gary's true identify and that he had outstanding arrest warrants. When the deputy directed Gary to exit the car, he fled and was caught several blocks away. Deputies searched Maxwell's car and found two shotguns (one of them sawed off), a bag of shotgun shells, and a ski mask on the floorboard in front of the front passenger seat. In the pocket of Gary's pants they found shotgun shells matching one of the shotguns, and in the pocket of a coat that Maxwell had been sitting on in the driver's seat they found shells matching the other shotgun. In addition, deputies found a knit cap, a pair of rubber gloves, and a disposable camera tucked between the driver's seat and the console.

Several months later, while both men were in jail awaiting trial, Maxwell wrote out a one-page statement that he claims he prepared at Gary's request. The statement is signed "William Gary." Among other things, the statement says: "Clifford Maxwell did not have any knowledge of the guns in his car. The guns were placed in his car when he was in the store. When he returnd [sic], I did not tell him about the guns." Maxwell gave the written statement to his attorney.

Gary later pleaded guilty to possession of a firearm by a felon and was sentenced to 115 months' imprisonment. In his plea agreement, he admitted knowingly possessing the two shotguns that were found in Maxwell's car. Maxwell went to trial, and after he was found guilty the probation officer recommended a guidelines imprisonment range of 63 to 78 months based on a total offense level of 22 and a Category IV criminal history. But the district court added a two-level increase for obstruction of justice, *see* U.S.S.G. § 3C1.1, after concluding that Maxwell perjured himself when he testified that he was not aware of the guns and ammunition in his car and that he attempted to suborn perjury when he wrote Gary's purported statement. The court then calculated a sentencing range of 77 to 96 months' imprisonment and imposed a sentence of 90 months.

In his *Anders* brief counsel identifies several potential issues. He first considers whether Maxwell could argue that the district judge should have suppressed the evidence found in his car on the ground that the deputy did not have probable cause for the traffic stop. At the suppression hearing, Maxwell's attorney argued that the deputy was unable to see that Gary was not wearing a seat belt because it was dark and the deputy executed the stop only 27 seconds after Maxwell pulled out of a parking lot. But we defer to the district court's factual findings and credibility determinations unless they are clearly erroneous, *United States v.*

*Wendt*, 465 F.3d 814, 816 (7th Cir. 2006), and we will reverse only if we are "left with the definite and firm conviction that a mistake has been made," such as when the district court credited "exceedingly improbable testimony," *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citations omitted). Here, the district court heard testimony from two deputies, from Maxwell, and from an investigator hired by Maxwell. Gary did not testify, but the court accepted a stipulation that, if called to testify, Gary would say that he had been wearing his seat belt. Despite the conflicting testimony, there is nothing to suggest that the deputy who made the traffic stop gave "exceedingly improbable testimony" when he said he believed that Gary was not wearing a seat belt. Thus, as counsel concedes, it was not clearly erroneous for the court to credit the deputy's testimony and deny the motion to suppress. This potential argument therefore would be frivolous.

Counsel also considers whether Maxwell might argue that the district court erred by refusing to admit Gary's purported statement under Federal Rule of Evidence 804(b)(3). That rule provides that a "statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." We have interpreted this rule to establish a three-part test for the admissibility of statements against interest: (1) the declarant must be unavailable to testify at trial; (2) the statement must be against the declarant's penal interest; and (3) corroborating circumstances must exist that bolster the statement's trustworthiness. *United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004); *United States v. Shukri*, 207 F.3d 412, 416 (7th Cir. 2000). We review the district court's evidentiary rulings for abuse of discretion, but, even if an error is found, we will not reverse if the error was harmless. *Bonty*, 383 F.3d at 579.

The district court reasoned that Gary's purported statement was not against his penal interest and was undermined by the circumstances surrounding its creation: it was prepared nearly four months after the incident while Maxwell and Gary were in jail, it was instigated and written by Maxwell but supposedly signed by Gary, and it was not made by Gary to law enforcement officers. Though we hesitate to accept counsel's assertion that the statement does not inculpate Gary, we do agree that it would be frivolous to argue that the district court abused its discretion in concluding that the statement was not sufficiently trustworthy. By Maxwell's own admission, he, not Gary, wrote the statement. Maxwell was the only witness to its execution, and the district court had only his word that the signature on the document is really Gary's. Even assuming Gary actually signed the statement, there is no way of knowing the circumstances under which he did so, such as whether it was voluntary or whether he was coerced or threatened. *See United States v. Robbins*, 197 F.3d 829, 840 (7th Cir. 1999). Moreover, Gary's statement that Maxwell was unaware of the guns directly contradicts the physical evidence—the shotgun shells found in Maxwell's coat pocket matched the gauge of

one of the shotguns—and the deputy's testimony that the guns were visible on the floorboard of the passenger seat. *See United States v. Hite,* 364 F.3d 874, 883 (7th Cir. 2004) (concluding that statement was untrustworthy because it was contradicted by other evidence), *vacated and remanded on other grounds*, 543 U.S. 1103 (2005); *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995) (concluding that the declarant's comments exculpating the defendant were not trustworthy in part because there was no direct evidence to corroborate them); *United States v. Hamilton*, 19 F.3d 350, 357 (7th Cir. 1994) (concluding that statements were trustworthy in large part because they were corroborated by other witnesses).

Counsel also considers whether Maxwell could argue that there was insufficient evidence for the jury to find him guilty. Possession of a firearm may be constructive, which "exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object." *United States v. Gilbert*, 391 F.3d 882, 886 (7th Cir. 2004) (citation omitted). Constructive possession may be proved by direct or circumstantial evidence. *Id.* In reviewing a challenge to a jury's verdict for sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Groves*, 470 F.3d 311, 323 (7th Cir. 2006). We will overturn a jury verdict only if the defendant can show that the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *Id.* Here, as counsel acknowledges, there was ample evidence upon which the jury could find that Maxwell knew the shotguns were in his car and that he intended to exercise dominion and control over them, including the deputy's testimony that the shotguns were plainly visible on the floorboard of the passenger seat, and the presence of shotgun shells in Maxwell's coat pocket that matched the gauge of one of the shotguns. *See United States v. Stevens,* 453 F.3d 963, 966 (7th Cir. 2006); *United States v. Gill*, 58 F.3d 334, 336-37 (7th Cir. 1995). The fact that Maxwell owned the car, together with the other evidence, further supports the inference that he constructively possessed the guns found there. *See United States v. Covarrubias*, 65 F.3d 1362, 1369 (7th Cir. 1995). This potential argument thus would be frivolous.

Finally, counsel considers whether Maxwell might argue that the district court improperly increased his offense level by two points for obstruction of justice, despite the recommendation in the presentence report that no such increase be applied. The upward adjustment applies "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. A sentencing court's determination that a defendant obstructed justice is a factual finding that we review for clear error and will not overturn absent a "definite and firm conviction" that a mistake was made. *United States v. Davis*, 442 F.3d 1003, 1008-09 (7th Cir. 2006). Here, the district court found that Maxwell

falsely testified that he was not aware of the guns and ammunition in his car and tried to suborn perjury by writing a false statement for Gary to sign. There was ample evidence and testimony at trial to support the conclusion that Maxwell was aware of the guns that he was charged with possessing. Thus, any argument that the court erred in applying the increase for obstruction would be frivolous.

Accordingly, counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.