NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 8, 2009
Decided October 23, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-3406

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, |
| | Western Division. |
| *v.* | |
| | No. 07 CR 50065 |
| QUENTIN LOVE, | |
| *Defendant-Appellant.* | Frederick J. Kapala, |
| | *Judge.* |

### O R D E R

A jury found Quintin Love guilty of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and he was sentenced to 120 months' imprisonment. Love filed a notice of appeal, but his appointed lawyers move to withdraw because they do not believe there are any nonfrivolous arguments for appeal. *See Anders v. California*, 386 U.S. 738 (1967). Love has filed a response opposing counsel's motion, *see* CIR. R. 51(b), and he has also submitted a second document in which he asserts that counsel filed the motion without his approval.

But Love's approval was not needed, *see United States v. Garcia*, 35 F.3d 1125, 1132 (7th Cir. 1994), and since counsel's brief in support of the motion is facially adequate, we limit our review to the potential issues identified by Love and his counsel, *see United States v. Cano-Rodriguez*, 552 F.3d 637, 638 (7th Cir. 2009).

Counsel and Love first evaluate whether Love could challenge the denial of his motion to suppress. The district court denied the motion after hearing testimony from Robert Trout, one of the police officers who arrested Love. Trout testified that at approximately 5:00 a.m. on September 19, 2007, he and another officer, driving separate vehicles, responded to a dispatch stating that a 911 caller had reported seeing a sport utility vehicle stopped at an intersection in Rockford, Illinois, and its driver sleeping. When the officers arrived at the intersection, they encountered an SUV stopped at a green traffic light. As they drew closer, however, the SUV moved through the intersection. According to Trout, the driver proceeded for a block before making a U-turn and heading back, all the while swerving across the center line. Without turning on their lights or sirens, the two officers followed the SUV into a parking lot adjacent to an auto body shop. Officer Trout recounted that he approached the SUV after it came to a stop and shined his flashlight on Love, who appeared to be asleep in the driver's seat. After telling Love to place his hands on the steering wheel, Officer Trout saw a handgun on the front passenger's seat. Love was then arrested.

Love did not testify at the suppression hearing, but he asserted in his motion that the two officers could not have witnessed him driving erratically because he was sleeping in the SUV at the body shop long before they were dispatched. The district court, however, credited Officer Trout's testimony that he observed Love weaving between lanes before entering the parking lot. The court thus concluded that the officers had grounds for conducting a traffic stop.

We agree with counsel that any challenge to the district court's ruling would be frivolous. Although the defense was able to identify minor inconsistencies in Officer Trout's testimony, no evidence was introduced that would undermine the court's decision to credit the officer. Love's erratic driving gave the officers probable cause to cite him for driving on the wrong side of the roadway, *see* 625 ILL. COMP. STAT. 5/11-701, and reasonable suspicion to investigate whether he was intoxicated, *see* 625 ILL. COMP. STAT. 5/11-501. And when Trout saw the handgun in plain view, he had probable cause to arrest Love for unlawful use of a weapon. *See* 720 ILL. COMP. STAT. 5/24-1(a)(4).

Counsel next consider whether Love could argue that the government's evidence is insufficient to support the jury's verdict. To convict Love under § 922(g)(1), the government needed to prove that after a felony conviction he possessed a firearm or ammunition that

had traveled in or affected interstate commerce.  *See United States v. Gilbert*, 391 F.3d 882, 883 (7th Cir. 2004).  Only the element of possession was contested at trial.

In order to establish possession, the government had to establish that Love knowingly exercised control over the gun.  *See United States v. Quilling*, 261 F.3d 707, 712 (7th Cir. 2001). Officer Trout testified at trial that, while Love was not seen holding gun, it was visible on the passenger seat within Love's easy reach.  And both officers testified that after his arrest Love alerted them to a bag of ammunition in the center console and lamented that he "had to be drunk to leave a gun on the front seat."  Love also said, according to the officers, that they would "never guess" how he got the gun.

Love's defense was that he went to the body shop in the early morning hours to pick up his girlfriend's SUV and then, with the proprietor's permission, climbed into the SUV and went to sleep in the parking lot.  The proprietor of the body shop, who lives on the premises, confirmed that a customer had woken him before 3:00 a.m. to pay for repairs and get the keys to an SUV.  The proprietor could not remember the identity of the customer but did remember that the customer had asked for permission to sleep in the parking lot.  The witness did not know whether the customer had actually slept in the lot, but he did state with certainty that there was no gun on the passenger seat when he finished working on the SUV and parked the locked vehicle in the lot.  Despite Love's testimony, a rational jury could have inferred that Love brought the gun with him even if he was at the body shop to pick up his girlfriend's vehicle, and any argument to the contrary would be frivolous.

In his Rule 51(b) response, Love has identified two possible arguments relating to the 911 call that prompted the police to investigate: that the government prejudiced his defense by failing to preserve the recording of the 911 call, and that the district court erred by not allowing trial counsel to introduce an unredacted copy of the dispatcher's incident report. Both arguments would be frivolous.

In order to win an argument that destroying the 911 recording prejudiced his defense, Love would have to demonstrate that the government acted in bad faith—that the government destroyed the recording knowing it was exculpatory—and that the recording was material to Love's defense.  *See United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000).  Nothing in the record supports either contention.  The government represented that the Rockford Police Department routinely erases 911 recordings after a period of 60 days.  Love's trial counsel never challenged that representation or offered anything more than speculation about how it might have benefitted Love.  Thus, any argument that the failure to preserve the 911 tape prejudiced Love would be frivolous.

As for the incident report, the defense argued that it impeached Officer Trout because the dispatcher described the sleeping driver as a white male but Love is black. The district court admitted the document after redacting identifying information about the 911 caller, details of the conversation between the caller and the dispatcher, and entries about other officers who did not respond to the 911 call. But the court was generous in admitting even a redacted copy. There is nothing in the incident report contradicting the officers' testimony that they saw Love driving erratically and found a handgun in plain view on the passenger seat of the SUV he was driving. The 911 caller may have made a mistake about the driver's race or the dispatcher could have entered the information incorrectly, but the discrepancy does nothing to undercut Officer Trout's testimony that he followed Love's vehicle from the intersection back to the body shop. Any argument that the report was relevant to an issue at trial would be frivolous.

Finally, counsel and Love propose arguing that trial counsel provided ineffective assistance. Claims about trial counsel's performance, however, are best left to collateral proceedings, where the record can be expanded. *See, e.g., United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.