# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2497

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Minnesota. |
| | * | |
| Gary Sigmund Corum, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2004
Filed:  April 5, 2004

_____

Before RILEY and RICHARD S. ARNOLD, Circuit Judges, and HOVLAND[1]
District Court Judge.

_____

HOVLAND, District Judge.

Gary Corum appeals his conviction of three counts of intentionally obstructing or attempting to obstruct the free exercise of religious beliefs by threat of force in violation of 18 U.S.C. § 247(a)(2), and three counts of using a telephone to threaten to injure members or damage or destroy property of three synagogues in violation of 18 U.S.C. § 844(e).  For the reasons stated below, we affirm.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

## I. FACTUAL BACKGROUND

On July 28, 2001, Gary Corum, a Minnesota resident, left threatening messages on the voice mail systems of three synagogues in the Twin Cities area. The voice messages threatened the use of explosives, fire, and/or a dangerous weapon to burn down or blow up the synagogues. The messages also threatened to harm synagogue members. In the first telephone call, made to the Bais Yaakov School, housed in the Bais Yisroel Synagogue building in St. Louis Park, Minnesota, Corum said, "Listen there little Jewish gal. This is the White Aryan People's Party. We're gonna blow your fucking synagogue up this coming week and send you fuckers to the gas chambers. So good luck in trying to protect your fucking synagogues from the Aryan race. Heil Hitler!" In the second call, made to the Bet Shalom Temple in Hopkins, Minnesota, Corum threatened to burn the synagogue and said, "Listen my Jewish Zionist friends, we're tired of playing games with you. We are going to take over the planet. You're going into gas chambers. We will burn down your synagogue this coming week; this is not a threat. Heil Hitler." In the third call, made to the Mount Zion Temple in St. Paul, Minnesota, Corum said, "Okay listen you fucking Jews. You crucified Christ once, you're not going to pull a stunt again. We're putting (unintelligible) gas chambers (unintelligible) quickly. This week the (unintelligible) synagogue is going up in smoke and dynamite. Heil Hitler!" Upon receipt of the threats, the synagogues immediately contacted the police and then proceeded to review their respective security procedures. Bet Shalom Temple experienced a temporary drop in attendance.

Corum was subsequently indicted by a federal grand jury for six violations of federal law. Counts One through Three of the indictment charged Corum with "intentionally obstruct[ing] and attempt[ing] to obstruct, under circumstances in and affecting interstate commerce, by threat of force, the enjoyment and free exercise of religious beliefs" of synagogue members in violation of the Church Arson Prevention Act, 18 U.S.C. §§ 247(a)(2). Counts Four through Six charged Corum with using a

telephone to threaten to injure members or damage or destroy property of the aforementioned synagogues in violation of 18 U.S.C. § 844(e).

Corum filed pretrial motions to dismiss the indictment, asserting that the Church Arson Prevention Act violated the First Amendment's Establishment Clause, that 18 U.S.C. § 844(e) as applied to him was unconstitutional, and that the indictment failed to allege a sufficient nexus with interstate commerce. Following a hearing, the magistrate judge[2] issued a report and recommended the denial of Corum's motions. The district court[3] adopted the magistrate judge's Report and Recommendation and denied Corum's motions. Applying the three-part test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971), the district court concluded Sections 247 and 844(e) were constitutional. In addition, the district court concluded that the indictment contained a sufficient factual basis to satisfy the interstate commerce elements of the Church Arson Prevention Act and 18 U.S.C. § 844(e).

The jury found Corum guilty on all counts. Following his conviction, Corum moved for a judgment of acquittal on the grounds the evidence presented at trial was insufficient to satisfy the interstate commerce elements of the Church Arson Prevention Act and18 U.S.C. §844(e). Specifically, Corum asserted the Church Arson Prevention Act and Section 844(e) were unconstitutional, the government had failed to meet its burden of proving beyond a reasonable doubt that the offenses were in or affected interstate commerce, and the threats were not conveyed through an instrumentality of interstate commerce. The district court denied Corum's motion. The district court acknowledged the government had the burden of demonstrating an affect on interstate commerce, but added the government was not required to prove

---

[2] The Honorable Franklin L. Noel, Chief Magistrate Judge for the District of Minnesota.

[3] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

that the affect was substantial or that anyone's rights had actually been obstructed. The district court also recognized the telephone used by Corum was an instrumentality of interstate commerce despite the fact that it was used to place intrastate calls.

## II.   LEGAL ANALYSIS

### A.   18 U.S.C. § 844(e)

Corum argues his convictions under 18 U.S.C. § 844(e) should be set aside either because the Government failed to prove his conduct had an affect on interstate commerce or because 18 U.S.C. § 844(e), as applied in this case, is unconstitutional under United States v. Lopez, 514 U.S. 549 (1995). The Government responds by asserting that the evidence was sufficient to satisfy the interstate commerce element of 18 U.S.C. § 844(e) and that the application of 18 U.S.C. § 844(e) to Corum's conduct is within Congress's Commerce Clause power. We will review Corum's sufficiency of the evidence argument first.

"We review the sufficiency of the evidence de novo." United States v. Cuervo, 354 F.3d 969, 984 (8th Cir. 2004). "Following conviction, we view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences that support the verdict." Id.

Corum was charged with and convicted of three violations of 18 U.S.C. § 844(e), which provides in part:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate . . . commerce, or in or affecting interstate . . . commerce, willfully makes any threat, . . . concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, . . ., or

other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

Corum asserts the Government failed to satisfy the interstate commerce requirement of Section 844(e) because the evidence established the calls were local, did not cross any state lines, and did not involve commercial transactions. Corum relies on cases wherein the defendants were charged with violating 18 U.S.C. § 844(i) and contends the Government is required to show the telephone was actually used to affect interstate or foreign commerce.

The textual difference in the two subdivisions is fatal to Corum's argument. 18 U.S.C. § 844(i) prohibits the malicious damage or destruction by means of fire or an explosive of "any building, vehicle, or other real or personal property used in interstate commerce." 18 U.S.C. § 844(i). The two subdivisions rely on different types of conduct to establish the required interstate nexus. In general terms, in order to prove a violation of 18 U.S.C. § 844(i), the Government must show damage to property used in interstate commerce; whereas to prove a violation of 18 U.S.C. § 844(e), the Government must show an instrument of interstate commerce was used to communicate a threat. The plain language of 18 U.S.C. § 844(e) does not require proof of interstate commerce. Section 844(e) requires no additional proof of an interstate nexus beyond a showing that Corum used an "instrument of interstate commerce," namely a telephone, to make his threat.

It is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce. See United States v. Marek, 238 F.3d 310, 319, n.35 (5th Cir. 2001); United States v. Gilbert, 181 F.3d 152, 158 (1st Cir. 1999); United States v. Weathers, 169 F.3d 336, 341 (6th Cir.), cert. denied, 528 U.S. 838 (1999); United States v. Clayton, 108 F.3d 1114, 1116-17 (9th Cir.), cert. denied, 523 U.S. 896 (1997). Both intrastate and interstate telephone communications are part of an aggregate telephonic system. There is no dispute Corum used a telephone to communicate the bomb threat. Corum's use of a telephone to make his threats, even

if the calls were made intrastate, was sufficient to grant federal jurisdiction over his crime pursuant to Congress's power under the Commerce Clause. The intrastate use of a telephone to communicate a bomb threat is an activity that falls squarely within the explicit language of 18 U.S.C. § 844(e). Accordingly, when viewing the evidence in the light most favorable to the government, we hold there was sufficient evidence to satisfy the interstate commerce element of 18 U.S.C. § 844(e).

Corum also asserts that 18 U.S.C. § 844(e), as applied in this case, is unconstitutional under United States v. Lopez, 514 U.S. 549 (1995). This Court reviews constitutional questions de novo. United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002).

In United States v. Lopez, the United States Supreme Court identified three broad categories of activity that Congress could regulate under its Commerce Clause power.

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, those activities that substantially affect interstate commerce.

514 U.S. at 558 (internal citations omitted).

The statute here falls under the second category. While we have not had the opportunity to previously consider the constitutionality of 18 U.S.C. § 844(e), other Circuits have held no additional showing of an interstate nexus is necessary when a statute regulates an instrumentality of interstate commerce. United States v. Gil, 297 F.3d 93, 100 (2d Cir. 2002) (holding that a showing that a regulated activity

substantially affects interstate commerce is not needed when Congress regulates activity defined by the first two <u>Lopez</u> categories); <u>United States v. Marek</u>, 238 F.3d 310, 318 (5th Cir. 2001) (holding that the intrastate use of instrumentalities of interstate commerce is properly regulated by Congress under the second category defined in <u>Lopez</u>); <u>United States v. Gilbert</u>, 181 F.3d 152, 158 (1st Cir. 1999) (holding the fact a telephone is an instrumentality of interstate commerce is a sufficient basis for jurisdiction based on interstate commerce); <u>United States v. Clayton</u>, 108 F.3d 1114, 1117 (9th Cir. 1997) (holding that telephones are instrumentalities of interstate commerce falling under category two of <u>Lopez</u> and no further inquiry is necessary to determine that their regulation is within Commerce Clause authority).

The First Circuit's decision in <u>United States v. Gilbert</u>,181 F.3d 152, 158 (1st Cir. 1999), is persuasive. In <u>Gilbert</u>, the defendant was charged with phoning a bomb threat to the Department of Veteran's Affairs Medical Center in Leeds, Massachusetts, in violation of 18 U.S.C. § 844(e). On appeal, the defendant argued the Government had failed to prove an intrastate phone call affected interstate commerce. The First Circuit relied upon a line of intrastate telephone cases and reasoned that:

> [b]oth intrastate and interstate telephone communications are part of an aggregate telephonic system as a whole. And as long as the instrumentality itself is an integral part of an interstate system, Congress has power, when necessary for the protection of interstate commerce, to include intrastate activities within its regulatory control.

<u>United States v. Gilbert</u>, 181 F.3d at 158-59 (quoting <u>Kerbs v. Fall River Indus., Inc.</u>, 502 F.2d 731 (10th Cir. 1974)). The First Circuit concluded by holding"[t]he use of the telephone in this case to make a bomb-threat was, without more, sufficient to sustain jurisdiction under the interstate commerce clause." <u>Gilbert</u>, 181 F.3d at 159.

In a similar challenge, this Court held an interstate network of automatic teller machines is a "facility in interstate or foreign commerce," and even the use of an ATM machine to make "an entirely intrastate electronic transfer" of funds between two local banks satisfied the interstate commerce element of the Travel Act, 18 U.S.C. § 1952. United States v. Baker, 82 F.3d 273, 275 (8th Cir. 1996), cert. denied, 519 U.S. 1020 (1996).

The reasoning and analysis of Baker and Gilbert apply equally to the current case. Congress has the power to regulate instrumentalities of interstate commerce. United States v. Lopez, 514 U.S. 549, 558 (1995). Purely intrastate activity falls within this power when an instrumentality of interstate commerce is used. United States v. Baker, 82 F.3d 273, 275 (8th Cir. 1996). We reject the constitutional challenge made by Corum and conclude that 18 U.S.C. § 844(e) requires a sufficient interstate nexus – the use of an instrument of interstate commerce – to satisfy the Commerce Clause. Accordingly, Corum's convictions under 18 U.S.C. § 844(e) did not violate the Commerce Clause.

## B.     CHURCH ARSON PREVENTION ACT

Corum was also charged and convicted of three violations of the Church Arson Prevention Act, which provides in relevant part:

(a)     Whoever, in any of the circumstances referred to in subsection (b) of this section–

(2)     intentionally obstructs, by force or by threat of force, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so . . . .

shall be punished as provided in subsection (d).

(b)  The circumstances referred to in subsection (a) are that the offense is in or affects interstate or foreign commerce.

18 U.S.C. §§ 247(a)(2) and (b).  The offense in this case is the intentional obstruction of or attempt to obstruct the enjoyment of the free exercise of religious beliefs of the members of each of the three synagogues in the Twin Cities area.

Corum contends his convictions under the Church Arson Prevention Act must be vacated because: (1) the Act is unconstitutional, and (2) there was insufficient evidence presented at trial to satisfy the interstate commerce requirement of the Act. The Government contends the Act is a constitutional exercise of legislative power and there was sufficient evidence to satisfy all of the requirements of the Act.  As the constitutionality of the Church Arson Prevention Act is the threshold issue, we will consider it first.

### 1)    CONSTITUTIONALITY

Corum contends the Church Arson Prevention Act is unconstitutional in that it violates the Establishment Clause of the First Amendment.  Our review is de novo. United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995).  Our analysis of this issue is governed by Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971).

The First Amendment commands in part that"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." A statute will pass constitutional muster under Lemon so long as it: (1) has a secular legislative purpose, (2) neither advances nor inhibits religion in its principal or primary effect, and (3) does not foster an excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971).  The requirement the law serve a "secular legislative purpose" does not mean the law's purpose must be unrelated to religion.  See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 335 (1987) (recognizing that the

government may sometimes accommodate religious practices without violating the Establishment Clause). "[T]hat would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted." Id. Rather, the objective of the "secular legislative purpose" requirement is to "prevent the relevant governmental decision maker–in this case Congress–from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." Id.

The Church Arson Prevention Act has a secular purpose, that is, to curb threats of violence directed against religious institutions that affect interstate commerce. See United States v. Grassie, 237 F.3d 1199, 1209 (10th Cir. 2001) (finding Section 247's legislative history informative on the specific impact of church attacks on interstate commerce). Moreover, the Act does not endorse, sponsor, or advocate religion. The Act does not single out one religious belief for special protection, but applies equally to all faiths. Consequently, the Act constitutes a valid exercise of congressional authority under the Lemon analysis. The fact 18 U.S.C. § 247 may have been motivated in part by a religious purpose is not fatal. Lemon only requires there be a secular purpose for the legislation, not that there be a solely secular purpose. See Wallace v. Jaffree, 472 U.S. 38, 56 (1985) ("For even though a statute that is motivated in part by a religious purpose may satisfy the first criterion [of the Lemon test]."); Lynch v. Donnelly, 465 U.S. 668, 680 (1984) ("The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations.").

The Church Arson Prevention Act likewise passes the second prong of the Lemon test because it neither advances nor inhibits religion in its principal or primary effect. "For a law to have forbidden 'effects' under Lemon, it must be fair to say that the government itself has advanced religion through its own activities and influence." Amos, 483 U.S. 327, 337. Such is not the case here. The primary effect of the Act

is to curb violence and threats of violence that adversely affect an aspect of interstate commerce Congress found to be particularly vulnerable to violent interference. Any effect the Act may have with respect to the protection of those who chose to worship free from interference would not constitute an advancement of religion by the government itself. See Carter v. Peters, 26 F.3d 697 (7th Cir.), cert. denied, 513 U.S. 1003 (1994) (finding that a statute that enhanced penalties for crimes committed in houses of worship had neither a religious purpose nor the principal effect of advancing religion).

Finally, we find the Church Arson Prevention Act does not foster an excessive entanglement with religion as contemplated under Lemon. 18 U.S.C. § 247 prohibits all violent interference with religious exercise. Although the government, in its role as the Act's enforcer, may interact with religious organizations, it is not required to engage in persuasive monitoring of or intrusion into the activities of these organizations. Agostini v. Felton, 521 U.S. 203, 233 (1997) (acknowledging that some interaction between church and state is inevitable and that some involvement between the two has always been tolerated). Corum warns of a lurking danger the Act will be applied inconsistently, thereby giving favor to a particular religion or religious ideology. As with any law, there exists the possibility that the Church Arson Prevention Act will be abused in application. However, we believe the best course of action is vigilance as opposed to invalidation of the Act.

### 2)    SUFFICIENCY OF THE EVIDENCE

Finally, Corum contends his convictions under the Church Arson Prevention Act should be vacated because there was insufficient evidence presented at trial to establish the violation was in or affected interstate or foreign commerce. As previously noted, when addressing sufficiency of the evidence claims we view the evidence in the light most favorable to the government. We will reverse only if no

reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Carlisle, 118 F.3d 1271, 1273 (8th Cir. 1997).

The record reveals that the government presented sufficient evidence for the jury to have determined the offense (threatening telephone calls) affected interstate commerce.

For the foregoing reasons, we affirm.

_____