# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-3244, 03-3260, 03-3431 & 03-3432

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MICHAEL D. BONTY and
CHARLES E. HALL,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Southern District of Illinois.
No. 02 CR 30116—**Michael J. Reagan**, *Judge.*

———————

ARGUED JUNE 3, 2004—DECIDED SEPTEMBER 7, 2004

———————

Before BAUER, RIPPLE and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Michael Bonty and Charles Hall appeal their convictions for the interstate transportation of a minor with the intent to commit aggravated sexual assault under 18 U.S.C. § 2423(a) and 18 U.S.C. § 2. Appellants challenge the propriety of evidentiary rulings made during trial and argue that there was insufficient evidence to convict. We disagree and affirm the convictions.

The events giving rise to Bonty's and Hall's convictions occurred on September 27, 2002, when the men, both in

their thirties, decided to try to pick up teen-age girls at a shopping mall in St. Louis, Missouri. "Jane Doe 1" and "Jane Doe 2" were the unfortunate subjects of this plan; they were thirteen and fifteen years old, respectively. At the shopping mall Bonty impressed the girls by telling them that he was a record producer and a friend of popular rap musicians. Bonty and Hall then invited the girls to cruise Lindburgh Boulevard—a popular past time for teenagers in the area. The girls accepted the invitation and the group left the mall together in Bonty's car. At that point they picked up "John Doe," a friend of the girls, age fifteen.

While they were driving, Bonty suggested they smoke marijuana together; everyone agreed. Bonty purchased marijuana and then drove them across the Mississippi River into Illinois to his home in East St. Louis. The group gathered in Bonty's living room where they listened to music and smoked the marijuana. During the course of the night on several occasions Bonty asked Jane Doe 1 to have sex with him, she refused each time. Bonty also asked Jane Doe 2 to have sex with him; she also refused. Finally Bonty became angry and tried to forcefully drag Jane Doe 1 into his bedroom; she successfully resisted him. Bonty then locked the front door to the house, securing it with a padlock and set the house alarm. When Bonty attempted to drag Jane Doe 1 into the bedroom she began crying and vomiting. Bonty went downstairs and returned with something wrapped in a towel, which he put to John Doe's head and told Jane Doe 1 that he would shoot John Doe if she didn't go in his bedroom. Jane Doe 1 still refused to go, instead she grabbed onto Jane Doe 2. Bonty struck Jane Doe 2 so that the girls were separated and dragged Jane Doe 1 into his bedroom where he raped her repeatedly over the next three hours. During that time Hall turned up the stereo so that Jane Doe 2 and John Doe could not hear what was going on in the bedroom. After the assault Bonty and Hall ushered the children out of the house and into Bonty's car. John Doe

looked over his shoulder on the way out and saw Bonty and Hall give each other high-fives, shake hands and laugh. Bonty drove the victims back to their homes in Missouri around 4:00 a.m.

## Sufficiency of the Evidence

Bonty argues that there was insufficient evidence to support the jury's finding that he undertook interstate travel with the intent of committing aggravated sexual assault. Hall appeals his conviction for aiding and abetting Bonty, also claiming insufficiency of evidence. We consider the evidence in the light most favorable to the government and will overturn the conviction only "if the record contains no evidence on which a rational jury could have returned a guilty verdict." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002).

Defendants' convictions were pursuant to 18 U.S.C. § 2423(a). At the close of the trial, the jury was instructed as to the elements of Section 2423(a):

First:    That the defendant did knowingly transport in interstate commerce, Jane Doe 1, from the State of Missouri to the State of Illinois;

Second:    That the defendant did so with the intent that Jane Doe 1 engage in sexual activity for which a person can be charged with a criminal offense, namely: aggravated criminal sexual assault under Illinois law, as charged in the superseding indictment; and

Third:    That Jane Doe 1 was under the age of eighteen years at the time.

Bonty concedes that he transported Jane Doe 1 across state lines; he also concedes that he sexually assaulted Jane Doe 1 later that night; what he contests is the notion that

at the moment he was crossing into Illinois with Jane Doe 1 he did so with the intent to commit the aggravated sexual assault. Bonty argues that when he was transporting Jane Doe 1 he only intended to have consensual sex with her and that it wasn't until *after* the thirteen-year-old unexpectedly declined his sexual advances that it occurred to him to use force—at which point they were already in Illinois.

Bonty's optimistic scenario of the events is not wholly implausible, and perhaps some jury somewhere might have arrived at this conclusion. Bonty didn't get that jury. Instead, Bonty's jury reached the conclusion that, based on the evidence, he intended to commit rape that night. We do not believe this finding was irrational.

The government presented evidence demonstrating that the men picked up the girls at the shopping mall, transported them into Illinois and ultimately committed aggravated sexual assault. In the process the government presented evidence of Bonty's intent. The government showed the temporal proximity of the trip across State lines and the assault—occurring within a few hours of each other. The government also demonstrated that once the men took the victims to East St. Louis, they told them they could not leave the house on foot because the neighborhood was too dangerous, effectively trapping them there. The government presented evidence that during the evening, prior to the rape, Bonty repeatedly told the girls they might as well agree to have sex with him voluntarily because, "somebody is going to get fucked tonight." Finally, the government presented evidence that Bonty and Hall celebrated the assault after it happened. It is apparent that the men contemplated that the sex might not be consensual and that force would be necessary.

This Circuit has recognized that a defendant may have more than one purpose in the interstate transportation of a minor. *United States v. Vang*, 128 F.3d 1065, 1069-72 (7th Cir. 1997). It takes little stretch of the imagination to con-

clude that, in transporting Jane Doe 1 across State lines, Bonty intended to have sex with her that night either (1) with her consent or (2) by force. The government need only prove that a "significant" or "compelling" purpose of the trip—not the dominant purpose—was to commit aggravated assault. *Id.* at 1072. The evidence presented was sufficient to support this scenario.

Hall makes an additional argument that there is insufficient evidence to support the charge that he aided and abetted Bonty. A person aides and abets if he, "knowingly participated in the transaction"; mere presence at the time of the crime is not enough to support a conviction. *United States v. Coleman*, 179 F.3d 1056, 1061 (7th Cir. 1999). At trial the government presented evidence showing that Hall accompanied Bonty to the mall, participated in the cruising and pot smoking, threatened the children to get them to remain in the house, turned up the stereo to cover the sounds of the assault, and celebrated with Bonty after the fact. Hall argues that the witnesses providing this information were not credible (a determination left to the jury) and that the remainder of the evidence shows only that he helped Bonty after the fact. Hall fails to convince us that no rational jury could consider this evidence—viewed in a light most favorable to the government—and conclude that he was guilty of aiding and abetting Bonty.

### Evidentiary Challenges

Hall challenges two evidentiary rulings made during trial. We review evidentiary rulings by the trial judge for abuse of discretion; further, even if error is found, we will not reverse a verdict if the error was harmless. *United States v. Garcia*, 986 F.2d 1135, 1139 (7th Cir. 1993).

Hall first challenges the exclusion of a statement made by Bonty in which Bonty told FBI Special Agent John Jimenez that Hall had nothing to do with the events of September

27. Hall believes this statement should have come in as an exception to hearsay under Federal Rule of Evidence 804(b)(3) as a "statement against interest." A statement against interest is admissible if: (1) the declarant is unavailable to testify at trial; (2) the statement is against the declarant's penal interest; and (3) corroborating circumstances exist that bolster the statement's trustworthiness. *United States v. Shukri*, 207 F.3d 412, 416 (7th Cir. 2000).

The district court found that Hall could not meet the second part of this test; we agree. A statement is against penal interest if it subjects the declarant to criminal liability. *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995). Bonty's statement—that Hall had nothing to do with the events of September 27—did not tend to implicate Bonty and was not against Bonty's penal interest. *See*, *e.g.*, *Williamson v. United States*, 512 U.S. 594, 600 (1994) (finding that non-inculpatory statements are not admissible even if made within a broader context of a generally inculpatory narrative). Hall believes we should evaluate the statement in the context of Bonty's entire interview; this does not strengthen Hall's argument. At the time Bonty made the statement he continued to deny that he sexually assaulted Jane Doe 1. It is simply not enough that during the interview Bonty admitted to some facts—that he had picked up the girls at the shopping mall and taken them to his home—that "possibly could" lead to criminal liability; to be inculpatory he must admit to criminal behavior. *Butler*, 71 F.3d at 253 ("Dixon, though placing himself in the room where the guns were found, did not admit to anything remotely criminal"). Similarly, Hall would seek refuge in the Ninth Circuit's decision in *United States v. Paguio*, where that court held a father's statement that his son had nothing to do with making false statements on a loan application was admissible. 114 F.3d 928, 932-33 (9th Cir. 1997). The case is clearly distinguishable; the Ninth Circuit allowed in the father's statement because the inculpatory

and exculpatory portions of his statement were "not practically separable,"—the father was taking sole responsibility for the crime—here Bonty simply made no inculpatory statement. *Id.* at 934.

Hall also challenges the admission of testimony regarding his sexual advances toward Jane Doe 2. He believes that this testimony should have been excluded under Federal Rule of Evidence 403 as not probative of any fact in issue and unduly prejudicial. Specifically, Hall argues that, because he is a thirty-one-year-old black man, his propositioning a fifteen-year-old white girl inflamed the jury. Further, he believes that making sexual advances toward Jane Doe 2 was not probative of whether he aided and abetted Bonty. The government argues that the statements were relevant to demonstrate Hall's intent to participate in Bonty's scheme; at trial there was an issue as to whether Hall knew that the purpose of picking up the girls at the mall was to later engage in a sexual encounter. The government further argued that any prejudicial effect of the testimony was lessened because the testimony only came in once (it was not repeated) and the jury was instructed not to "be influenced by any person's race, color, religion, national ancestry, or sex." We find the testimony was relevant and that the trial court did not abuse its discretion in finding that, on balance, its probative value outweighed the prejudicial effect.

AFFIRMED.

**A true Copy:**

       **Teste:**

                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*